Wayne Maurice **BIHMS**, Appellant,

v.

**STATE** of Texas, Appellee.

No. 7453.

Court of Civil Appeals of Texas, Beaumont.

March 1, 1973.

Donald K. Shipley, Houston, for appellant.

Carol S. Vance, Dist. Atty., Max D. Carlson and Jack C. Frels, Asst. Dist. Attys., Houston, for appellee.

DIES, Chief Justice.

The State of Texas (appellee) instituted a revocation of probation proceeding against Wayne Maurice Bihms (appellant), a juvenile. Trial was to the court resulting in a revocation of a previously granted probation and a commitment of the juvenile to the Texas Youth Council, from which juvenile perfects this appeal.

Appellant predicates this appeal upon two points, i. e., (1) "[T]hat no evidence should have been allowed concerning statements made after Wayne Bihms' arrest by any of the Police officers" and (2) "That the trial court errored in admitting into Evidence Plaintiff's Exhibit No. 2 in that such Exhibit is hearsay, contains extraneous matters not related to the present Case and contains statements concerning alleged conduct that are not offenses within the meaning of the Juvenile Act of the State of Texas."

We overrule both points and affirm the trial court's decision.

The record reveals that one Roosevelt Douglas owned a blue 1965 Chevrolet Impala two-door hardtop which he found missing from the parking lot on his return some four hours after leaving it. Officer Dan Colvin of the League City Police Department, on the same day, saw this automobile backed up to a Diesel fuel tank on a construction job. Three young men were standing behind the car, apparently putting gas in the car. He stopped the car and identified appellant as one of the youths in the car. They were taken into custody on a suspicious person ordinance and a check revealed that the auto was a stolen vehicle.

Officer M. N. Dawsen of the Houston Police Department was dispatched to League City to pick up the three suspects.

When he first came in contact with the three suspects, he "gave them the warning from the blue card that was provided by the District Attorney's office." This warning is as follows:

> " 'That you have the right to have a lawyer present to advise you either prior to any questioning or during any questioning.

> " 'If you are unable to employ a lawyer, you have the right to have a lawyer appointed to counsel with you prior to or during any questioning, and;

> " 'You have the right to remain silent and not make any statement at all and that any statement you make may and probably will be used in evidence against you at your trial.

> " 'You have the right to terminate the interview at any time.' "

This warning was given orally and the three suspects were not carried before a magistrate. Some effort to perform the latter was made but the courts were in session.

After giving the oral warning, Officer Dawsen questioned appellant who "stated that they got it [the auto] off a parking lot." Officer Bob Beck of the Houston Police Department testified that he was in the car when Officer Dawsen gave the warning and heard it.

Appellant cites in support of his first assignment of error Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (1944); In re Fisher, 184 S.W.2d 519 (Tex.Civ.App., Amarillo, 1944, no writ), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).

*Dendy* clearly holds that in proceedings under the Juvenile Delinquency Act (Art. 2338–1, Vernon's Ann.Civ.St.), the privilege against self-incrimination applies. This holding is followed in the *Fisher* case (184 S.W.2d at 523).

■ The requirements of *Miranda* are best summarized by quoting from the opinion as follows:

"He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

We think the warning given appellant by Officer Dawsen fully satisfies the *Miranda* requirements.

In relation to juveniles, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), sets forth the constitutional safeguards which must be applied. It held that juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment. Specifically required are: (1) Written notice of the specific charge or factual allegations given to the child and his parents or guardian sufficiently in advance of the hearing to permit preparation. (2) Notification to the child and his parents of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child. (3) Application of the constitutional privilege against self-incrimination. (4) Absent a valid confession, a determination of delinquency and an order of commitment based on sworn testimony subjected to the opportunity for cross-examination in accordance with constitutional requirements.

With regard to the privilege against self-incrimination—with which we are here concerned—the court said:

"We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique— but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." In re Gault, supra, 87 S.Ct. at 1458, 18 L.Ed.2d at 561.

■ At the time of apprehension, appellant was over fifteen years of age. There is no evidence of suspicious conduct which in any way intimates that his statement was the result of coercion, ignorance or fright. There are no features indicating "incommunicado interrogation . . . in a police-dominated atmosphere." (*Miranda*, supra 86 S.Ct. at 1612, 16 L.Ed.2d at 707) Appellant's statement to Officer Dawsen following the warning was properly admitted in evidence. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." (*Miranda,* supra 86 S. Ct. at 1630, 16 L.Ed.2d at 726)

■ A clear understanding of appellant's second point of error requires a copy of petitioner's exhibit to be appended to

this opinion. Prior to its receipt in evidence, Michael R. Barth, Juvenile Probation Officer, was called to the stand and the following testimony was adduced:

"Q What date was your first contact with Wayne Bihms as probation officer?

"A 1–25–71.

"Q Mr. Barth, I am showing you a document and ask you to examine it, marked as Petitioner's Exhibit No. 2. Did you prepare this document?

"A Yes, sir, I did.

"Q Is that your signature?

"A Yes, sir, it is.

"Q Do you have a copy of this?

"A Yes, sir, I do.

"Q All right. I will ask you, in referring to it, at what date did you prepare this report?

"A This report was prepared on July 19th.

"Q Of 1972?

"A Yes, sir.

"Q All right, sir.

"A On or about.

"Q In preparing this report, calling your attention to it, you have listed a number of previous referrals to your department on this juvenile; is that correct?

"A Yes, sir.

"Q Would you review those for the Court, please, sir?

"MR. SHIPLEY [appellant's attorney]: Your Honor, I would object to any previous referrals other than what we are concerned with here today. * * * May I have the witness for a moment, Your Honor?

"THE COURT: Surely.

\*      \*      \*      \*      \*      \*

"MR. SHIPLEY: On each of the referrals that we haven't gone into yet, were you the person at the Probation Department that handled Wayne Bihms?

"THE WITNESS: No, not on each and every one of them."

His testimony which followed established that part of the report was based on information and data not in his personal knowledge. He was also asked:

"Q Mr. Barth, based upon your personal observations, experience as a probation officer, and your work in this field, what is your recommendation for Wayne Maurice Bihms on disposition?

"A I am recommending the child to be placed in the custody of the Texas Youth Council."

Petitioner's Exhibit No. 2 was not introduced until after the court had announced his decision to revoke the probation.

Appellant cites as his authority for the exclusion of any matters in Exhibit No. 2 not personally known by witness Barth Ballard v. State, 192 S.W.2d 329, 331–332 (Tex.Civ.App., Amarillo, 1946, no writ). There Ballard was adjudged a delinquent child under Art. 2338–1, V.A.C.S., for the offense of injuring " 'public property, to-wit: a sewer pipe belonging to the City of Ralls, Texas, in Crosby County.' " He was not represented by counsel and there was no proof of his actual age or that he was a juvenile under the Act. Furthermore, the trial court "heard and considered statements made to him out of the presence and hearing of appellants and that such statements were not made at the trial. Particulary, did the trial court admit hearing such statements made by the child's school teacher about its being absent from school and its attitude in school. The statement of facts reflects that hearsay testimony, appearing to us to be material, was heard by the trial court and that testimony con-

cerning extraneous matters not alleged in the petition was heard on the trial. Particularly was evidence heard about the child being absent from school at different times without the consent of its parents and about the child being suspected of having committed other offenses."

No such facts appear here. Witness Barth helped prepare the report. Some of its data was within his personal knowledge. The trial court did not admit it until after his decision to revoke the probation.

"The rule in respect to admitting inadmissible evidence in the trial of a case in which there is no jury is that if there is sufficient evidence to support the court's judgment without the aid of such inadmissible testimony, unless the contrary is shown, it will be presumed that the court disregarded the same in rendering its judgment. [citing authorities]." In re Brown, 201 S.W.2d 844, 846–847 (Tex. Civ.App., Waco, 1947, error ref. n. r. e.)

Affirmed.

## APPENDIX

TO THE JUDGE OF THE JUVENILE COURT

Wayne M. Bihms  M/15
Date of Birth:  2–20–57
Petition No.:  23,182 Reopen
Date:  7–19–72
Court Date:  7–27–72

PRESENT OFFENSE:
Wayne is appearing before the Court for the alleged offense of Violation of Probation. He allegedly violated this probation on or about the 3rd day of July 1972, by allegedly taking an automobile, of the value of over $50.00. Wayne readily admitted riding in the car with the knowledge that it was stolen.

PREVIOUS REFERRALS:
5– 2–70  Aggravated Assault and Disorderly Conduct—Closed at Intake.
7– 7–70  Theft From Person—Closed at Intake.
12–15–70  Theft (Shoplifting) (Misdemeanor)—Court 1–25–71, Declared delinquent placed at Harris County Youth Village.
1–10–71  Breaking and Entering Coin Operated Machine—Pending—Released 10–7–71 to parents.
10–23–71  Wandering The Streets—District Attorney declined to file.
1–27–72  Breaking and Entering Coin Operated Machine—Court 2–22–72, Declared delinquent placed at Harris County Youth Village, released 6–12–72 to Gulf Coast Trades Center.

THE CHILD:
During Wayne's somewhat lengthy involvement with our Department, his attitude toward supervision and other services offered, has been superficial and manipulative. He apparently has not as yet learned to control his own impulses as evidence by his behavior in the freedoms of community life.
He appears educationally retarded as evidenced by his scores on the Wide Range Achievement Test. (Grade 4.1 Reading, Grade 5.0 Spelling, and Grade 5.0 in Math).

THE FAMILY:
Wayne is the third of six children. Wayne's natural father's whereabouts is unknown. He lived with Elvia Barnes, an aunt, until he was about twelve (12) years old at which time he went to live with his natural mother and step-father, Zora Lee (Whitfield) and Robert Lee Morris. They reside at 6612 DePriest, Houston, Texas. Mr. Morris is a construction worker earning approximately $7200.00 annually. Mrs. Morris is employed as a waitress for the Houston Baptist College earning approximately $3600.00 annually.
Mr. Morris appears apathetic to Wayne's plight, choosing to ignore this officer's request that he and Mrs. Morris come to this Department to discuss the implications of Wayne's situation. Mrs. Morris reports that he yells a lot and doesn't give her adequate funds. There is apparently considerable conflict between them.
It is the opinion of this officer that the home lacks the control and supervision necessary for the adjustment of the child.

EVALUATION:
Wayne's basic problem is his apparent inability to accept supervision and control his behavior when he is allowed the freedoms of the community. Seemingly this is due

to limited intellectual control over immediate impulses. He has not learned to set goals and has short vision into future consequences of his behavior. Possibly the early maternal rejection is a variable to be considered. Wayne functions adequately under controlled supervision, but seemingly is unable to make appropriate decisions when allowed too much freedom. This immaturity and the seriousness of his behavior warrant further control. Two placements at the Harris County Youth Village and a placement at the Gulf Coast Trades Center seem to have had no effect on Wayne.

DISPOSITIONAL ALTERNATIVES:

This officer is of the opinion that there can be only one suggestion for placement at this time. Wayne's attitude, behavior, and immaturity require continued control. This officer is of the opinion that the control, social, and academic services offered in the Texas Youth Council would best serve the interest of justice and of the child.

Respectfully submitted,
R. O. D. Schoenbacher
Chief Juvenile Probation Officer
BY (s) Michael R. Barth
Juvenile Probation Officer
(s) Charles Phipp
Supervisor

MRBarth: jd