Dan LANDRY, a juvenile child, Appellant,

v.

The STATE of Texas, Appellee.

No. 7529.

Court of Civil Appeals of Texas, Beaumont.

Dec. 13, 1973.

Rehearing Denied Jan. 17, 1974.

Hugh E. O'Fiel, Beaumont (on appeal only), for appellant.

J. G. Sanderson, Richard Hughes, Asst. Dist. Attys., Beaumont, for appellee.

DIES, Chief Justice.

Daniel Landry, a juvenile, was charged with carrying a prohibited weapon, a pistol, on March 26, 1973. On June 27, 1973, the Juvenile Court of Jefferson County committed him to the care, custody, and control of the Texas Youth Council, as authorized by Art. 5143d, Vernon's Ann.Civ. St. From this order of commitment, the juvenile brings this appeal.

Among his points, the juvenile complains there was no sworn testimony at his trial

proving the offense of carrying a prohibited weapon. We sustain this point and remand the cause for a new trial.

The following transpired at trial:

"BY THE COURT:

"Okay, you may step down. All right, now, [court appointed counsel], have you explained to Daniel his rights in this matter, that he doesn't have to say anything in Court, today; that he may have a jury to determine whether or not he was guilty of carrying this prohibited weapon and to determine whether or not he was a juvenile delinquent?

"[COURT APPOINTED COUNSEL]:

"Judge, I've explained this quite fully to Daniel, and to Mrs. Landry. They take no issue of the fact, whatsoever, that Daniel did have in his possession a pistol. Uh, it's our understanding that the probation department has recommended in this case that the child be sent to the Texas Youth Council. He does not feel that is justified in this case; Mrs. Landry doesn't feel like it's justified. Daniel, himself says that he did not know it was against the law to carry a pistol around. He found the pistol in the house, in his home. It belonged to someone that was visiting in the home and he picked it up and carried it out. And—

"BY THE COURT:

"All right, . . . let's go ahead and take the adjudication stage and when we get to the disposition, we'll certainly be glad to hear more.

"[COURT APPOINTED COUNSEL]:

"All right.

"BY THE COURT:

"Now, he does wish to affirm the allegations in the petition?

"[COURT APPOINTED COUNSEL]:

"Yes, sir, Judge.

"BY THE COURT:

"By way of explanation, do you think —do you have anything you'd like to tell the Court, Daniel, at this time, by way of explanation of why you had this pistol?

"BY THE JUVENILE:

"A    I thought it was a blow gun—

"Q    You thought it was a what?

"A    I thought it was a cap pistol.

"Q    A cap pistol? Is that what you said?

"A    I thought it was a blow gun.

"Q    A blow gun?

"A    Yes, sir."

In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), it was held that juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment. Specifically required are:

"(1) [W]ritten notice of the specific charge or factual allegations, given to the child and his parents or guardian sufficiently in advance of the hearing to permit preparation;

"(2) [N]otification to the child and his parents of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child;

"(3) [A]pplication of the constitutional privilege against self-incrimination; and

"(4) [A]bsent a valid confession, a determination of delinquency and an order of commitment based only on sworn testimony subjected to the opportunity for cross-examination in accordance with constitutional requirements."

See Bihms v. State, 491 S.W.2d 740 (Tex. Civ.App., Beaumont, 1973, no writ).

Here there is no sworn testimony to prove the offense of carrying a prohibited weapon as required by *Gault,* supra. These trials are not informal hearings, and the only way an appellate court can review the evidence to determine if the juvenile has been accorded his constitutional rights, is for the record to reveal completely the state's case.

The order of commitment is reversed and a new trial ordered. This cause was tried on June 27, 1973, before the effective date of Family Code, Title 3, relating to Delinquent Children and Children in Need of Supervision. Acts 63rd Leg., 1973, Ch. 544, p. 1460, effective September 1, 1973. The holding in the majority opinion and the views expressed in the concurring opinion were made in *construing* the statutes in effect at the time of the hearing and were not made with respect to the new statute which did not then govern the rights of the minor.

Reversed and remanded.

KEITH, Justice (concurring).

I concur in the reversal of the judgment of the trial court and the remand of the cause; but, feeling that other serious questions are presented by this record, I add to the well-written opinion of our Chief Justice.

A fifteen-year-old boy was charged with being a *delinquent child,* the precise words used in the caption of the petition and order in this cause.[1] He was charged with the violation of Art. 483, Vernon's Ann.P. C.; and, had he been two years older, his *maximum* punishment would have been a fine of not less than $100 nor more than $500, *or* by confinement in jail not less than one month nor more than one year. Yet, he has been committed to the custody of the Texas Youth Council for more than six years. Art. 2338–1, § 5(c), and Art. 5128, V.A.C.S. This has been done upon a record that so far transgresses constitutional rights that the judgment ·cannot withstand the mildest breeze emanating from the Constitution.

I need not apologize for writing at length on this case since I subscribe to the views of Justice Douglas, speaking for four justices: "Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law." Haley v. Ohio, 332 U.S. 596, 601, 68 S.Ct. 302, 304, 92 L.Ed. 224, 229 (1948).

When the juvenile entered the court for the hearing, which in a very few minutes resulted in his incarceration for many years, he was cloaked in the presumption of innocence and protected by the full panoply of his constitutional rights, including those against self-incrimination. He could be convicted only by the state meeting its burden of proving the corpus delecti and his criminal agency beyond a reasonable doubt.[2] As pointed out in the majority opinion, certain basic constitutional rights were guaranteed to juveniles. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

A year earlier, the Court had determined that while juvenile hearings need not conform to all of the requirements of a criminal trial, the hearings must measure up to the essentials of due process. Kent v. United States, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84, 97–98 (1966).

---

1. I have grave doubts as to the caption of the cause. Since the petition may be read to the jury which determines the ultimate question of delinquency, such may very well be prejudicial. See 10 Houston Law Rev. 720, 730 (1973).

All emphasis has been supplied unless otherwise indicated.

2. Constitution of Texas, Art. 1, § 10; In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed.2d 368 (1970); Santana v. Texas, 397 U. S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594 (1970), reversing State v. Santana, 444 S.W.2d 614 (Tex.1969).

It is unnecessary to enter the judicial thicket of the civil-criminal dichotomy as applied to juvenile proceedings. Unquestionably, such proceedings are penal in nature. As Justice Johnson, now a member of our Supreme Court, said in Leach v. State, 428 S.W.2d 817, 822 (Tex.Civ.App., Houston—14th Dist., 1968, no writ):

> "The delinquency statute is penal in its *effect* for the court may commit the child to a public institution until the child reaches the age of twenty-one years. The statute must be construed therefore, in the same manner it would be construed under the penal code."

See also, In re Torres, 476 S.W.2d 883, 884 (Tex.Civ.App., El Paso, 1972, no writ).

Among the fundamental constitutional rights conferred on juvenile by *Gault* was the privilege against self-incrimination. The Court pointedly noted: "It would indeed be surprising if the privilege against self-incrimination were available to hardened criminals but not to children." (387 U.S. at 47, 87 S.Ct. at 1454)

There is not a scintilla of evidence in our record that at the time and place in question the juvenile had a pistol in his possession, except the juvenile's qualified admission as set out in the majority opinion.[3]

Our juvenile had not been confronted with any witnesses; no person had given any testimony that the juvenile did, in fact, have a pistol on or about his person. Thus, under *Gault,* "an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements." (387 U.S. at 57, 87 S.Ct. at 1459)

At that stage of the proceedings, the state had not discharged its burden of es-

tablishing the corpus delecti by any competent evidence. Instead, the trial judge called upon the defendant to give incriminating evidence against himself by asking counsel: "Now, he does wish to affirm the allegations in the petition?" and counsel's reply: "Yes, sir, Judge." Of course, all will agree that a person is not required to give evidence of an incriminating nature against himself; but, under proper safeguards, there may be a waiver of such privilege.

The prevailing general definition of waiver, in this sensitive area of federal constitutional rights, is that expressed by the United States Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 161, 1466 (1938), "an intentional relinquishment or abandonment of a known right or privilege."

The roots of privilege, as was said by Justice Fortas in *Gault,* "has a broader and deeper thrust than the rule which prevents the use of confessions which are the product of coercion." (387 U.S. at 47, 87 S.Ct. at 1454) Before calling upon the juvenile to "affirm the allegations in the petition", the state had the burden of establishing a waiver of the right against self-incrimination. And, it must be shown that the waiver is made voluntarily, knowingly, and intelligently. Cf. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694, 707 (1966), involving extra-judicial confessions. See also, Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L. Ed.2d 747 (1970), relating to acceptance of plea of guilt.

When we come to consider waiver by a juvenile, several interesting questions arise: Can a child in fact waive his constitutional rights? If he can, what factors should be considered? Can someone other than the child waive the child's rights? If so, who may do so and what factors should be considered?[4]

---

3. Even this meager "testimony" was almost wholly exculpatory in nature. Cf. 1 Branch's Ann.P.C. (2d ed. 1956) § 95, p. 103.

4. Although these questions were propounded by the author in 23 Baylor Law Rev. 467, 468 (1971), a definitive answer to our precise question is not to be found therein.

In Johnson v. Zerbst, supra, it was stated: "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" (304 U.S. at 464, 58 S.Ct. at 1023)

Accepting the teachings of our own Supreme Court in Carrillo v. State, 480 S.W. 2d 612, 615 (Tex.1972), "that juvenile proceedings are . . . civil, not criminal, in nature", I have serious doubts that a minor can waive anything in a judicial proceeding, much less his fundamental constitutional rights. As was said in Watson v. Glenn, 82 S.W.2d 704, 705 (Tex.Civ.App., Austin, 1935, no writ): "Minors being persons non sui juris cannot themselves waive any rights."

Following Justice Pope's eloquent dissent in Brenan v. Court of Civil Appeals, Fourteenth Dist., 444 S.W.2d 290, 294, et seq. (Tex.1968), it is now settled in Texas that a guardian ad litem must be appointed for a juvenile charged with being a delinquent. Starks v. State, 449 S.W.2d 559 (Tex.Civ. App., Eastland, 1969, error ref.).[5]

Our record shows that a guardian ad litem was appointed to represent the interest of the juvenile in this case; but it is completely silent as to his activities during the hearing. Even so, it is clear that a guardian ad litem cannot waive any rights of the minor. In Greathouse v. Fort Worth & Denver City Ry. Co., 65 S.W.2d 762, 765 (Tex.Com.App., 1933, holdings approved), the Court said:

> "The guardian ad litem or next friend can make no concessions nor can he waive or admit away any substantial rights of the minor, or consent to anything which may be prejudicial to him."

Or, as was said in Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795, 797 (1954): "Neither the next friend nor the parent of a minor child is authorized to agree to a judgment which throws away its substantial rights." See also, 43 C.J.S. Infants § 111, pp. 303–304 (1945); 42 Am.Jur.2d, Infants § 184, pp. 169–170 (1969). Clearly, under these authorities, the guardian ad litem would have had no authority to waive the juvenile's rights against self-incrimination.

Under the leading authorities to be discussed hereinafter, counsel *alone* is not authorized to make the waiver of the constitutional rights. Yet, that is the only waiver of the privilege which we can find in this case.

In essence, the juvenile in our case was called upon to plead guilty to the petition at a time when there was no competent evidence before the court showing his guilt. In Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274, 279 (1969), Justice Douglas set out several rules which are applicable here:

> "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. *We cannot presume a waiver of these three important federal rights from a silent record."*

---

5. *Accord:* Felder v. State, 463 S.W.2d 272 (Tex.Civ.App., Houston—14th Dist., 1971, error ref. n. r. e.); Premeaux v. State, 472 S.W.2d 795 (Tex.Civ.App., Beaumont, 1971, error ref. n. r. e.); Berkley v. State, 473 S.W.2d 346 (Tex.Civ.App., Fort Worth, 1971, no writ); Boardman v. State, 473 S.W.2d 538 (Tex.Civ.App., Fort Worth, 1971, no writ).

By virtue of its supervisory authority over the lower federal courts, the Supreme Court had earlier held that amended Rule 11, Federal Rules of Criminal Procedure, made it mandatory upon the trial judge to interrogate the defendant *personally,* and to make a record which conclusively demonstrated an intelligent waiver of his constitutional rights in entering a plea of guilt. McCarthy v. United States, 394 U. S. 459, 89 S.Ct. 1166, 22 L.Ed. 418 (1969).

As pointed out by Justice Harlan in his dissent in Boykin v. Alabama, supra, "[W]hat is now in effect being held is that the prophylactic procedures of Criminal Rule 11 are substantially applicable to the States as a matter of federal constitutional due process." (395 U.S. at 247, 89 S.Ct. at 1714) Federal Criminal Rule 11 provides, inter alia, that a plea of guilty may not be accepted "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

It is obvious, from the statement of the case found in the majority opinion, the juvenile was not so addressed. Consequently, it can be said without fear of contradiction: The juvenile did not waive his constitutional rights against self-incrimination.

Art. 1, § 10, Constitution of Texas, guarantees that a minor may not be required to give incriminating evidence against himself; yet, the same authority guarantees that he shall have the right of being heard by himself or counsel, or both. There must be a procedure which guarantees to the minor *both* of these rights to be exercised and claimed as it may appear to his best interest. Under the authorities previously noted, I am of the opinion that neither the minor or his guardian ad litem—acting alone or together—may waive his constitutional rights.

However, I am of the opinion that the trial court *and* the minor's attorney may do so under conditions which establish *of record in the proceedings then being heard* that the waiver is made voluntarily, knowingly, and intelligently. The trial judge should, by following the applicable provisions of Federal Criminal Rule 11,[6] supra, make certain that the *minor*—and not just the lawyer—understands such rights.

Competent counsel, having ascertained the facts of the case, in the exercise of his professional judgment and discretion must then determine which of the rights must be exercised—to remain silent or to testify. Counsel is not to be judged in his performance by hindsight but is bound to render reasonably effective assistance. Moore v. Beto, 458 F.2d 386 (5th Cir. 1972). Cf. Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). Counsel's performance, or lack thereof, may then be tested under the usual rules relating to effectiveness of appointed or retained counsel. Steel v. State, 453 S. W.2d 486 (Tex.Cr.App.1970); Johnson v. State, 478 S.W.2d 954 (Tex.Cr.App.1972). But, cf. Ex parte Stauts, 482 S.W.2d 638 (Tex.Cr.App.1972).

With a trial court fully attuned to the constitutional and statutory rights of a minor who is represented by competent counsel, due process will be achieved. The rights of the minor will be protected and those of society preserved. With anything less, the rights of both will be sacrificed.

There is still another reason why the judgment of the trial court must be reversed. It is clear that hearsay evidence entered into the rendition of the judgment. Our dissenting brother has a lengthy discussion of the material found in the "Analysis of the Factors" signed by the assistant probation officer. Every statement made therein is hearsay—no witness having given testimony as to any of such alleged "facts" found.

Although we have what is designated as a complete statement of facts, it does not contain any report of the probation officer. Indeed, there is no *evidence* from any source of our juvenile's prior criminal ac-

6. Our statutory counterpart to Federal Rule 11 in Art. 26.13, V.A.C.C.P.

tivities (or lack thereof) to be found in the record. I agree with my dissenting brother that the trial judge had this report before him "while considering the disposition of this matter." A comparison of this "juvenile material" with the remarks shows clearly that such material formed the basis of the remarks. Thus, our record is the converse of that found In re Brown, 201 S.W.2d 844, 847 (Tex.Civ.App., Waco, 1947, error ref. n. r. e.).

The consideration of the hearsay evidence found in the juvenile records falls within the prohibition set out in Ballard v. State, 192 S.W.2d 329, 332 (Tex.Civ.App., Amarillo, 1946, no writ).

It has long been the settled rule in this state that hearsay is incompetent to establish any fact and can never form the basis of a finding of fact or of the judgment of the court, whether it is objected to or not. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628, 631 (1941). See also, Aetna Insurance Company v. Klein, 160 Tex. 61, 325 S.W.2d 376, 381 (1959); Way v. Fisher, 425 S.W.2d 704, 705 (Tex.Civ.App., Houston—14th Dist., 1968, no writ); Sampson v. Apco Oil Corporation, 476 S.W.2d 430, 431 (Tex.Civ.App., Amarillo, 1972, no writ).

The trial court was not authorized to consider the hearsay evidence contained in the report of the juvenile department. Cf. Bihms v. State, 491 S.W.2d 740, 743 (Tex. Civ.App., Beaumont, 1973, no writ). In giving weight to such evidence—and I repeat, it is quite evident from the colloquy between the trial judge and the other participants in the hearing that such was done —the trial court abused the discretion confided to it by the statute.

I need not comment on the juvenile's fourth point complaining of being deprived of effective assistance of counsel. From what has been said, it is apparent that this point has merit.

STEPHENSON, Justice (dissenting).

I respectfully disagree. I would affirm the judgment of the trial court and leave Daniel Landry in the custody of the Texas Youth Council.

I view this case as one in which a fifteen-year-old boy was given the protection that he and all juveniles are entitled to under the law. The Juvenile Court first appointed a guardian ad litem to represent him, and no complaint is made of that appointment. The court then appointed an attorney to represent him; and, although there is a point of error that the trial court failed to provide effective assistance, there is nothing in the record to indicate such attorney did not have sufficient experience and ability to represent Daniel Landry in this matter.

The record shows his mother was present, and in fact testified. Written notice was given of the charge against this boy, and no complaint is made about the sufficiency of the notice before the trial court heard this matter. No complaint is made about the sufficiency of the warning given to this boy by his attorney, before that attorney announced in open court that Daniel Landry did have a pistol in his possession. No assertion is made here that Daniel Landry was not in possession of a pistol when apprehended, and this was the only issue before the Juvenile Court. The record shows he was born February 4, 1958, and therefore the Juvenile Court had jurisdiction to hear the case.

The contest in the trial court, if there was one, was only that Daniel Landry and his mother wanted the trial court to place him on probation. The only explanation given by the mother to the court as to why Daniel Landry had the gun was that if a daughter, Janet Landry, had not brought it in the house, "He wouldn't have had none to pick up." The discourse given by the trial court in considering disposition of this case shows that Daniel Landry's juvenile record consisting of three pages (dating from 1967 to the present time), prepared by Mr. Boehm, was before him and that Daniel had already been to Gatesville three times and had gotten out the last time on a technicality.

A copy of an "Analysis of the Factors" signed by Anthony J. Boehm, Assistant Probation Officer, Jefferson County Probation Services, was filed in this court. There is no showing that such report was filed in the trial court, although from the things said by the trial judge in open court, which are a part of our record, undoubtedly this is the report he had before him while considering the disposition of this matter. Such report shows Daniel Landry's mother has had to rear thirteen children by herself since her husband died in 1963, eight of whom have been committed to the Texas Youth Council. The three pages of the record of Daniel Landry, referred to by the court, beginning June 10, 1967 through August 23, 1972, shows these charges: malicious mischief, destruction of property, cursing and vulgar signs, theft of a BB gun, nuisance, theft of grain, theft of a bicycle, pointing a gun at some kids, beating up kids, shoplifting, theft of rods and reels, attempted burglary, assault, aggravated assault (threw a knife at kids), stealing bicycle tires and lawnmower, numerous burglaries and thefts.