**Elious TYLER, Jr., a delinquent child, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 7593.**

Court of Civil Appeals of Texas, Beaumont.

June 13, 1974.

Ronald L. Walker, Beaumont, for appellant.

W. A. Tatum, Beaumont, for appellee.

DIES, Chief Justice.

The appellant, Elious Tyler, a juvenile, was charged with theft of personal property of a value less than $50. In accordance with the requirements of V.T.C.A., § 54.04, Title 3 of the Texas Family Code, two distinct hearings were had. In the first—the adjudication hearing—the juvenile affirmed the charges in writing and was adjudged to have engaged in delinquent conduct within the meaning of § 51.03 of the Family Code. No complaint is made of this proceeding.

At a subsequent disposition hearing, appellant was committed to the care, custody, and control of the Texas Youth Council. It is this hearing of which appellant complains in this review. His sole point of error is that § 54.04(b) denies his constitutional right to be confronted by and to cross-examine witnesses against him. The section challenged provides:

"(b) At the disposition hearing, the juvenile court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses. Prior to the disposition hearing, the court shall provide the attorney for the child with access to all written matter to be considered by the court in disposition. The court may order counsel not to reveal items to the child or his parent, guardian, or guardian ad litem if such disclosure would materially harm the treatment and rehabilitation of the child or would substantially decrease the likelihood of receiving information from the same or similar sources in the future."

In this disposition hearing, the court permitted the probation officer to testify regarding the contents of the "Analysis of the Factors" which contained opinions of a psychologist. The psychologist did not appear.

In enacting § 51.01, Title 3 of the Family Code, the legislature (Acts 1973, 63rd

Leg., p. 1460, ch. 544, effective September 1, 1973) declared its purpose to be:

"(1) to provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions;

"(2) to protect the welfare of the community and to control the commission of unlawful acts by children;

"(3) consistent with the protection of the public interest, to remove from children committing unlawful acts the taint of criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation;

"(4) to achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety and when a child is removed from his family, to give him the care that should be provided by parents; and

"(5) to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced."

We have set out in full the "public purpose" of Title 3 of the Family Code, because we think it clearly demonstrates the reasons our legislature has determined that children should be treated with some difference than adults in criminal matters. The motives behind these differences are noble, intended to shield children from the consequences of criminal trials, convictions, and punishment. The procedure emanates from compassion, and society's hope that gentleness, understanding, and rehabilitation to the young offender will prevent the same person, on reaching adulthood, from criminal conduct. Indeed, we reject the contention that § 54.04(b), above set out, deprives a child of a basic constitutional right. If we are to apply all our rules and procedures of criminal law to children, we might as well abolish Title 3 and treat them in the same fashion as adults. We believe this action would be regressive. We are confident that the approach of Title 3 is another step by mankind in its effort to find a better and a more just way of life.

Appellant cites us In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and Landry v. State, 504 S.W.2d 580 (Tex.Civ.App., Beaumont, 1973, error ref. n. r. e.). The *Landry* case arose before § 54.04(b) became effective, and when the statute did not require separate hearings on adjudication and disposition. *Gault* (387 U.S. 1, 87 S.Ct. at 1436, 18 L.Ed.2d at 538) declares:

"We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile 'delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process. See Note 48 infra. We consider only the problems presented to us by this case. These relate to the proceedings by which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. As to these proceedings, there appears to be little current dissent from the proposition that the Due Process Clause has a role to play."

See Note 48 in the opinion saying in part:

"The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process; *hence what we hold in this opinion with regard to the procedural requirements at the adjudication stage has*

*no necessary applicability to other steps of the juvenile process.*" (Id. at 387 U. S. 1, 87 S.Ct. at 1145, 18 L.Ed.2d at 548, emphasis supplied)

And, 387 U.S. 1, 87 S.Ct. on p. 1443, 18 L.Ed.2d on p. 546 of the opinion:

"[*N*]*or do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child.*" (emphasis supplied)

See also McKeiver v. Pennsylvania, 403 U.S. 528, 29 L.Ed.2d 647, 91 S.Ct. 1976 (1971), holding that a jury trial is not a constitutional right of a juvenile (there charged with robbery, larceny, and receiving stolen property).

Leach v. State, 428 S.W.2d 817 (Tex. Civ.App., Houston—14th Dist., 1968, no writ), cited by appellant, was decided before the effective date of § 54.04(b) and does not concern the sole point in this appeal. We agree with the statement, which appellant cites from Haley v. Ohio, 332 U. S. 596, 601, 68 S.Ct. 302, 92 L.Ed. 224, 229 (1948) as follows:

"Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law."

Here there is no complaint that appellant was not accorded due process in the adjudication hearing. In the disposition hearing, there is good reason to give the judge the latitude afforded by § 54.04(b) to consider all factors in deciding what disposition to make. Any possible danger to the child is removed by the requirement that the court provide the attorney for the child with all written matter to be considered by the court in disposition. We conclude that § 54.04 of Title 3 of the Family Code is not unconstitutional as denying due process; we overrule appellant's point of error and affirm the judgment of the trial court.

Affirmed.

KEITH, Justice (concurring).

I join in the majority opinion which upholds the constitutionality of Family Code, § 54.04(b), V.T.C.A., against the attack made—that the minor was denied his constitutionally protected right of confrontation by witnesses and his concomitant right of cross-examination of such witnesses.

The narrow question of constitutional law presented is new in the sense that it arises under a new statute; it is not new in the context of being a new question of constitutional right. The Family Code so recently adopted has brought to this field of the law the well-known bifurcated trial. In the adjudicatory hearing [§ 54.03], the full panoply of constitutional rights of due process of law are all afforded the minor.[1] However, in the disposition hearing [§ 54.04], a different rule applies.

A logical starting point in our study of the constitutional question presented is the federal criminal system. Presentence reports have long been used there, as well as in many state courts, in determining the punishment to be assessed *after* the defendant has been found guilty of the offense charged. Indeed, the practice is embodied in Federal Rules of Criminal Procedure, Rule 32(c)(2).[2]

---

1. In addition to the authorities cited by Chief Justice Dies, see those mentioned in my concurring opinion in Landry v. State, 504 S.W.2d 580 at 582, et seq., (Tex.Civ.App., Beaumont, 1973, error ref. n. r. e.), construing the earlier statute.

2. "*Report.* The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. The court before imposing sentence may disclose to the defendant or his counsel all or part of the material contained in the report of the presentence investigation

R. Lehrich, in "Presentence Reports," 47 F.R.D. 225, 228 (1969), has this comment upon such reports:

> "Although the presentence report contains much information about the defendant that is vital to the determination of his sentence, his prison treatment, and his parole, it has been held many times in the federal courts that neither the defendant nor his counsel has any right to examine the report for possible errors that might be rebutted."

Note that the accused may not, as a matter of right, even look at the report, much less cross-examine the authors of the statements therein contained.

Justice Black, not known for his disregard of the constitutional rights of persons accused of crime, was the author of the leading case upon the subject: Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).[3] Justice Black noted that "most of the information now relied upon by judges [which is found in the reports of the probation workers] to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." (337 U.S. at 250, 69 S.Ct. at 1084)

He rejected the constitutional challenge, saying:

> "The due-process clause should not be treated as a device for freezing *the evidential procedure of sentencing in the mold of trial procedure.* So to treat the due-process clause would hinder if not preclude all courts—state and federal— from making progressive efforts to improve the administration of criminal jus-

tice." (Id. at 251, 69 S.Ct. at 1085, emphasis supplied)

Justice Douglas, also a long-time fervid supporter of constitutional rights, has joined in the discussion. In what is termed "Mr. Justice Douglas' Statement", announced simultaneously with the adoption of the new Federal Rules of Criminal Procedure, 39 F.R.D. 69, 278 (1966), a similar view is adopted:

> "The imposition of sentence is of critical importance to a man convicted of crime. Trial judges need presentence reports so that they may have at their disposal the fullest possible information. See Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. *But while the formal rules of evidence do not apply to restrict the factors which the sentencing judge may consider,* fairness would, in my opinion, require that the defendant be advised of the facts—perhaps very damaging to him —on which the judge intends to rely. The presentence report may be inaccurate, a flaw which may be of constitutional dimension. Cf. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690." (emphasis supplied)

Justice White, in Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442, 446 (1969), held:

> "Presentence reports are documents which the rule does not make available to the defendant as a matter of right. *There are no formal limitations on their contents, and they may rest on hearsay* and contain information bearing no relation whatever to the crime with which the defendant is charged." (emphasis supplied)

---

and afford an opportunity to the defendant or his counsel to comment thereon. Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government."

3. Other cases so holding are cited in *Lehrich,* supra (47 F.R.D. at 229, fn. 20).

See and compare Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), reaffirming Williams v. New York, supra. See also, Advisory Committee's Note to Rule 32(c)(2), reported in 39 F.R.D. 69, 193, and again in 18 U.S.C.A., Federal Rules of Criminal Procedure, Rules 32 to End, Supp. Pamphlet, 1961–1970, p. 6, for additional citations.

The provision of § 54.04(b) of our new code specifically requires the trial court to provide the attorney for the child "with access to all written matter to be considered by the court in disposition." This satisfies the constitutional requirement; for, indeed, the courts and the scholars now generally confine their remarks to the discretionary *denial* of such access; seemingly, they are in accord that a disclosure with a right to refute material therein contained would satisfy all constitutional requirements. Indeed, such is the main thrust of the *Lehrich* article mentioned earlier which contains copious quotations from and citations to authorities not available to this court.

While the judge of the juvenile court is not passing "sentence" on the minor at the disposition hearing, he has the duty and obligation of entering a judgment which is to the best interest of the minor as well as to society in general. He must have available for use all of the recognized tools and information in order to enable him to discharge this responsibility. The report of the probation officer, analogous to the pre-sentence report discussed above, is one such tool of recognized value.

The examination of the rationale of the bifurcated trial now required in juvenile cases discloses the answer: *The constitutional right of due process extending to the adjudication hearing is not applicable to the disposition hearing.* Thus, in holding § 54.04(b) constitutional, we protect the substantive rights of the minor while at the same time permitting the trial judge to utilize the best available tools in fashioning the decree. Williams v. New York, supra.[4]

Having disposed of the single issue presented by this appeal, I do not join in the introspective probe of the intent of the legislature nor of the motives which may have prompted the enactment of Title 3, Family Code. Such questions are not presented by this appeal.

I would reserve for another day all inquiries into extraneous matters not necessary to a determination of this case. Upon a complete record squarely presenting questions involving legislative policy, we may then write upon the "purpose" provisions of Title 3 of the new Family Code. Knotty questions of constitutional law may leap out of the woodwork once presented. See, e.g., Smith v. State, 444 S.W.2d 941 (Tex.Civ.App., San Antonio, 1969, error ref. n.r.e.), and E. Chase, "Juvenile Sentencing," 51 Tex.L.R. 673 (1973).

My concurrence is confined to the single narrow issue presented by the record in this cause.

---

4. *Caveat:* Such probation reports, and similar material, should not be made known to the trial judge before the adjudication hearing has been completed. The very nature of the material ordinarily contained therein may tend to prejudice the rights of the minor to a fair hearing at the adjudicatory stage. The federal rule noted prohibits the submission of such presentence reports before there has been a plea or a finding of guilt. Similar limitations should be read into our State practice in order to assure the minor a fair hearing at the adjudication stage of the proceeding. See and compare: Gregg v. United States, supra (394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed. 2d at 447); United States v. Hopwood, 422 F.2d 348, 349 (10th Cir. 1970).