In the Matter of J. R. C.

No. 8440.

Court of Civil Appeals of Texas, Texarkana.

April 26, 1977.

Rehearing Denied May 24, 1977.

Ronald Ned Dennis, Kirkpatrick, Grant, Dennis & Reed, Marshall, for appellant.

Sam Baxter, Crim. Dist. Atty., Marshall, for appellee.

CORNELIUS, Justice.

In March of 1974 appellant, a juvenile, was placed in detention upon allegations that he had murdered his mother. A hearing was first held to determine if he was mentally fit to answer for the offense and to proceed with either an adjudication hearing or a transfer hearing. He was determined to be fit, and upon petition of the district attorney filed pursuant to Section 54.02 of the Texas Family Code, a hearing was then held which resulted in the entry of an order waiving the juvenile court's jurisdiction and transferring appellant to the district court for criminal proceedings. Upon appeal to this court, that order was reversed and the cause was remanded to the juvenile court for a new hearing. At the hearing on remand, appellant was again ordered transferred to the district court for criminal proceedings and appellant has perfected this appeal from that order.

Section 54.02 of the Texas Family Code provides in part as follows:

"54.02. Waiver of Jurisdiction and Discretionary Transfer to Criminal Court

(a) The juvenile court may waive its exclusive original jurisdiction and transfer a child to the appropriate district court or criminal district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was 15 years of age or older at the time he is alleged to have committed the offense and no adjudication hearing has been conducted concerning that offense; and

(3) after full investigation and hearing the juvenile court determines that because of the seriousness of the offense or the background of the child the welfare of the community requires criminal proceedings.

.    .    .    .    .

(f) In making the determination required by Subsection (a) of this section, the court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive ·and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court."

In support of its order of transfer, the juvenile court made findings of fact to the effect that appellant was alleged to have committed the offense of murder at a time when he was over the age of 15 years but under the age of 18 years; the offense was against a person and was committed in an aggressive and premeditated manner; there was evidence on which a grand jury would be expected to return an indictment against appellant; appellant was of sufficient sophistication and maturity to be treated as an adult; the prospects for ade-

quate protection of the public and the likelihood of rehabilitation of appellant by the use of procedures, services and facilities currently available were not good; and because of the seriousness of the offense and the background of the child, the welfare of the community required criminal proceedings. The transfer order contains similar findings, with references to the evidence upon which they are based, and sets forth fully the reasons for the court's conclusions, as is required by Section 54.02(h) of the Family Code and by this court's holding in the former appeal. *In Re J.R.C.*, 522 S.W.2d 579 (Tex.Civ.App. Texarkana 1975, writ ref'd n. r. e.).

Appellant presents thirty points of error which contend generally that there is no evidence or insufficient evidence to support the court's order; the court erred in considering psychological and social reports concerning appellant because said reports constituted hearsay and were not properly authenticated; the petition for transfer did not sufficiently describe the alleged offense; the summons to appellant and his attorney failed to comply with the mandatory requirements of Section 54.02(b); appellant was denied a speedy hearing as required by Section 53.05(b); and as the court's order of transfer was not filed of record until after appellant had reached the age of 18, the court lost jurisdiction. The points will be grouped for discussion.

Points 19 and 20 concerning the admissibility of the psychological and social reports present a threshold question because much of the evidence relied upon by the juvenile court was based on such reports. It is asserted that the reports should not have been considered because they constitute hearsay themselves, they were based upon further hearsay, and they were not identified or authenticated by any witness. The contention concerning hearsay has no merit. Section 54.02(d) of the Family Code requires the juvenile court to order such reports, and Section 54.02(e) specifically provides that " .   .   . the court may con-

sider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of witnesses." Although the reports, being ex parte and made out of court, were hearsay, the legislature is free to provide for the reception of hearsay statements into evidence when it is deemed necessary, and it has frequently created exceptions to the hearsay rule for such purposes. Such an exception is particularly appropriate in a proceeding such as this, where the purpose is not to determine guilt but merely to evaluate the background and maturity of the child in order to determine if he may be rehabilitated or if he should be subject to criminal proceedings. The rules of evidence have traditionally been relaxed in proceedings concerning the welfare of children. *Matter of Honsaker*, 539 S.W.2d 198 (Tex. Civ.App. Dallas 1976, writ ref'd n. r. e.); *Brown v. Brown*, 500 S.W.2d 210 (Tex.Civ. App. Texarkana 1973, no writ); *Cooksey v. Perkins*, 263 S.W.2d 952 (Tex.Civ.App. Galveston 1954, writ ref'd n. r. e.); *Williams v. Guynes*, 97 S.W.2d 988 (Tex.Civ.App. El Paso 1936, no writ). The objections to the reports on the ground that they were hearsay were therefore properly overruled. *Matter of P.B.C.*, 538 S.W.2d 448 (Tex.Civ. App. El Paso 1976, no writ); *Hughes v. State*, 508 S.W.2d 167 (Tex.Civ.App. Corpus Christi 1974, writ ref'd n. r. e.); *Hickman v. Smith*, 238 S.W.2d 838 (Tex.Civ.App. Austin 1951, writ ref'd). It was not necessary that the introduction of the reports be accompanied by the testimony of the authors. Compare *Matter of A.A.A.*, 528 S.W.2d 337 (Tex. Civ.App. Corpus Christi 1975, no writ). Neither did the failure to identify or authenticate the reports require their exclusion. On the joint motion of counsel for the State and appellant, the court ordered that appellant undergo psychiatric and psychological examinations by Dr. Littlejohn and by a representative of the Gregg-Harrison Mental Health and Mental Retardation Center, and that a social study be conducted by a representative of the Welfare Department. Reports of such examinations and social studies were ordered to be submitted directly to the court. The persons designated to make the reports were thus constituted officers or employees of the court to perform the services specified. Their reports were all personally signed and returned to the court as ordered. A court will judicially know the signatures of its own officers and employees, and further identification or authentication of their reports and official papers is not required. *Strippelmann v. Clark*, 11 Tex. 296 (1854); *Cardenas v. State*, 58 Tex.Cr.R. 109, 124 S.W. 953 (1910); 1 McCormick & Ray, Texas Evidence, Sec. 177 (2d ed. 1956). The procedure concerning the reports was not a denial of due process. Appellant's attorney participated in the designation of the persons who prepared the reports. He had notice of their identity, and pursuant to the requirements of Section 54.02(e) of the Family Code he received copies of the reports prior to the hearing. If there was doubt as to the genuineness of the reports or a need to cross-examine the authors with reference thereto, he had ample opportunity to raise the issue and call the authors as witnesses or produce other evidence bearing upon the question.

■ Having determined that the reports were properly considered, we pass to a consideration of the sufficiency of the evidence to support the court's order. In points 1 through 18 appellant argues there was no evidence or insufficient evidence to support the juvenile court's findings relating to those matters listed in Subsection (f) of Section 54.02 and particularly as to the seriousness of the offense and appellant's background, appellant's commission of the offense, the aggressive and premeditated nature of the offense, the sophistication and maturity of appellant, and appellant's best interests and the likelihood of successful rehabilitation. We make no attempt to mention all the evidence, but portions of it may be summarized as follows:

In the late afternoon of March 15, 1974, Deputy Goldman found appellant lying semi-conscious on the side of Highway 80 in Harrison County. He had scratches about his face and arms. Appellant related to Officer Goldman that he had been kid-

napped by a large black male whom he indicated had attacked his mother. An investigation ensued which resulted in the discovery of the mother's body which was lying on the bed in the family home. She had been strangled and a pillow case was still tightly tied around her neck. The screen door to the home was cut, apparently from the inside, but there was no other sign of a struggle. An autopsy performed on appellant's mother revealed that she had been choked and strangled with such force that her trachea was crushed. A photograph of her body was placed in evidence. Without detailing the evidence, suffice it to say that the investigations by law enforcement officials produced circumstantial evidence which indicated that appellant was the perpetrator of the offense, and Officer Jordan testified that based upon the facts revealed in such investigations, a grand jury would likely indict the appellant for the murder of his mother. Deputy Anderson testified regarding the Harrison County Juvenile Detention Center and the lack of available facilities to the juvenile court for the rehabilitation of juvenile offenders.

The psychological and psychiatric reports and social studies were by Dr. Littlejohn, Tom Akins, a psychologist with the Gregg-Harrison Mental Health and Mental Retardation Center, Pamela Montgomery, supervisor of Protective Services, State Welfare Department, and Dr. Billy Floyd, a psychiatrist. In these reports appellant was variously described as having an anti-social personality, an amoral attitude with little regard for the demands of reality, inadequate emotional control, and a tendency to act impulsively without regard to the demands of reality. One of the reports characterized him as "selfish, callous, irresponsible, impulsive and unable to feel guilt or to learn from experiences or punishment. Prognosis for this type individual is guarded at best." The reports further indicated that appellant is very intelligent and completely aware of right and wrong but loses control easily, and that his behavior "is marked by a history of explosive outbursts related to frustration of need gratification." The social study gave a thorough and detailed account of appellant's background and personal history.

We find the evidence sufficient to support the trial court's findings. Although there was ample evidence on all the criteria enumerated in Subsection (f) of the statute, it should be borne in mind that Section 54.02 does not require that, in order for the juvenile court to waive its jurisdiction, all of the matters listed in Subsection (f) must be established. Rather, it provides that the court may waive its jurisdiction if it finds that, because of (1) the seriousness of the offense, or (2) the background of the child, the welfare of the community requires criminal proceedings instead of juvenile proceedings. The statute only directs that the juvenile court *consider* the matters listed under Subsection (f) in making its determination. See *In Re W.R.M.*, 534 S.W.2d 178 (Tex.Civ.App. Eastland 1976, no writ). They are the criteria by which it may be determined if the juvenile court properly concluded that the seriousness of the offense or the background of the child required a transfer to criminal court. The juvenile court must consider those criteria in order that the appellate court may have a meaningful review of the basis upon which the conclusion was made, and can determine if the evidence *so considered* by the juvenile court does in fact justify the conclusion that a transfer is required. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; *In Re J.R.C.*, supra.

■ Appellant next complains that the petition for transfer was insufficient. The discretionary transfer article provides that the petition and notice requirements of Sections 53.04, 53.05, 53.06 and 53.07 of the Code must be satisfied. Section 53.04 provides in part that:

"    .   .   .

(d) The petition must state:

(1) with reasonable particularity the time, place, and manner of the acts alleged *and the penal law or standard of conduct allegedly violated* .   .   . .   .   ." (Emphasis supplied).

Appellee's second amended petition, on which the hearing was held, alleged:

"That on or about the 15th day of March, 1974, said J_____R_____C_____, in the County of Harrison and the State of Texas, did intentionally and knowingly cause the death of W_____C_____C_____ by strangling her by means unknown at this time."

Section 19.02 of the Texas Penal Code, effective January 1, 1974, provides that one commits an offense if he "intentionally or knowingly causes the death of an individual." Thus, the petition described the "standard of conduct allegedly violated" as required by Section 53.04(d)(1). It was not necessary to go further and designate the section of the Penal Code which condemns such conduct. Even the strict rules relating to criminal indictments do not require a specification of the Penal Code section when the elements of the offense are alleged. The petition was sufficient. See *Matter of P.B.C.,* supra.

■ Points 23 and 24 assert that the summons served upon appellant and his counsel failed to meet the requirements of Section 54.02. That section, in Subsection (b), provides that:

". . . the summons must state that the hearing is for the purpose of considering discretionary transfer to criminal court."

The summons here notified appellant and his counsel of a hearing on the petition of the district attorney

". . . asking for the Juvenile Court to consider waiving jurisdiction, and certifying J_____R_____C_____ as an adult, and transferring the case to District Court for Criminal proceedings . . . .".

A copy of the petition was attached. We find the notice sufficient. It actually apprised appellant and his counsel of more than the statute requires. The fact that the words used were not in the exact order of those in the statute does not change the fact that it stated what the statute required.

■ The next group of points urges that these proceedings should have been dismissed for failure of the State to provide appellant a speedy hearing. Section 53.05 of the Family Code provides that if the juvenile is in detention or will be taken into custody, the time set for the hearing shall be not later than 10 days after the day the petition was filed. A review of the chronology of these proceedings is necessary to determine if appellant was denied a speedy hearing as required by either Section 53.05 of the Texas Family Code or by the Texas or the United States Constitutions.

Appellant was placed in detention on March 20, 1974, as the result of a detention hearing held by the juvenile court on the same day. Appellant and his two attorneys were present. The need for detention was stipulated by all parties. On March 29, 1974, counsel for appellant and counsel for the State jointly moved the juvenile court to order psychological examinations and evaluations and a social study of appellant. The motion was granted on April 1, 1974. On motion of counsel for appellant suggesting that appellant was unfit to proceed, the question of fitness was tried to a jury on June 10, 1974, which resulted in a verdict of fitness. See Sections 55.04 and 55.05, Texas Family Code. On June 21, 1974, the State filed its original and its first amended original petition seeking a waiver of the juvenile court's jurisdiction and a transfer of the juvenile to criminal court. Likewise, on the same day the juvenile court filed its order accepting the jury verdict of fitness, ordering that the juvenile was fit to proceed, and setting the hearing on the question of discretionary transfer for the same day, June 21, 1974. Although no order of continuance is contained in the record, the hearing was apparently continued by agreement. On June 24, 1974, the State filed its second amended petition for transfer, and the hearing thereon was held on July 2, 1974. On appeal by the appellant this court reversed and remanded the proceedings for a new trial. Appellant then perfected an application for writ of error to the Texas Supreme Court seeking a rendition of the judgment rather than a remand. The application was refused on July 23, 1975. On the 25th day of March, 1976, counsel for

appellant and the State jointly moved for additional psychological evaluations and social studies, which motion was granted. The four reports were forwarded to the court on April 14, 1976, June 1, 1976, June 10, 1976 and June 12, 1976, respectively, and the new transfer hearing on remand was held on June 15, 1976. By reference to the foregoing chronology it can readily be seen that the juvenile court complied with the requirements of Section 53.05. The original and first amended petitions for transfer were filed on June 21, 1974, and the hearing was originally set for the same date. Section 53.05 merely requires that the time initially set for the hearing be not later than 10 days after the filing of the petition. It does not preclude continuing the hearing by agreement or for good cause. Smith, Parent and Child, Tex.Family Code Symposium, 5 Tex. Tech.L.Rev. 551 (1974). As for the delays which occurred after the time initially set for the hearing, appellant participated in or was responsible for a considerable portion of those delays, and under the record presented here he is in no position to complain of them.

 The last group of points (27, 28, 29 and 30) contend that the juvenile court lost jurisdiction of appellant because the transfer order was not filed in the minutes of the court until after appellant had reached the age of 18. Hearing on the question of transfer was held on June 15, 1976. The order of transfer was not contained in the original transcript on this appeal but has been included in a supplemental transcript presented for filing. It was signed by the juvenile judge on June 23, and it contains file marks showing that it was filed in both the county clerk's office (who acts as the juvenile court clerk) and the district clerk's office on June 24, 1976. Appellant became 18 on September 3, 1976. Appellant seems to contend that the transfer order was not actually filed until sometime in November of 1976 after appellant had become 18, and that the file marks were affixed at that time and backdated. Appellant has not presented to this court sufficient evidence to impugn the verity of the file marks shown on the transfer order, but even if it be established that the order was not filed until sometime in November, it not only would have been proper but would have been the duty of the juvenile court to file its order nunc pro tunc as of the date it was actually rendered and announced. See *Risher v. Chrisman*, 547 S.W.2d 287 (Tex.Civ.App. Dallas 1976, no writ). Moreover, it is now settled that once the jurisdiction of the juvenile court has been timely invoked by the filing of a petition for waiver of that court's jurisdiction and transfer of the juvenile to criminal court, the jurisdiction of the juvenile court continues until there has been a final disposition of the question of waiver and transfer, whatever be the age of the offender at the time of such final disposition. *R.E.M. v. State*, 532 S.W.2d 645 (Tex.Civ.App. San Antonio 1975, no writ).

The judgment of the trial court is affirmed.