20 S.W.3d 837 (2000)
In The Matter of J.S.S., a Juvenile.
No. 08-99-00121-CV.
Court of Appeals of Texas, El Paso.
June 8, 2000.
Rehearing Overruled July 6, 2000.
*838 M. Clara Hernandez, El Paso County Public Defender, El Paso, Scott Segall, Martin & Segall, El Paso, for appellant.
Jose R. Rodriguez, Ralph Elwood Girvin, County Attys., El Paso, for State.
Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

OPINION
ANN CRAWFORD McCLURE, Justice.
J.S.S., a juvenile, appeals from an order committing him to the Texas Youth Commission following an adjudication of delinquent conduct. J.S.S. waived his right to a jury trial, and the trial court found, based upon J.S.S.'s plea of true to the allegations in the petition and his voluntary stipulation of evidence and written admission, that J.S.S. engaged in delinquent conduct by possessing more than 50 but less than 2,000 pounds of marihuana. Following a *839 disposition hearing, the trial court entered a commitment order to the Texas Youth Commission. On appeal, J.S.S. contends that the trial court erred in considering the pre-disposition report at the disposition hearing because it was taken in violation of J.S.S.'s Fifth Amendment right to remain silent. Finding that a juvenile's Fifth Amendment rights extend through the conclusion of the disposition hearing and that the use of the incriminating information gathered during the interview violated J.S.S.'s privilege against self-incrimination, we reverse and remand for a new disposition hearing.

FACTUAL SUMMARY
U.S. Customs agents arrested sixteen-year-old J.S.S., a Mexican citizen and resident of Cd. Juarez, Chihuahua, Mexico, when they found 72 pounds of marihuana in a hidden compartment of a vehicle he attempted to drive into the United States through the Ysleta Port of Entry. The State filed a petition alleging that J.S.S. engaged in delinquent conduct by possessing more than 50 but less than 2,000 pounds of marihuana. With the consent of J.S.S., a juvenile court referee held the adjudication hearing in this case. After explaining to J.S.S. all of his applicable rights and ensuring that he understood them, the referee approved J.S.S.'s written waiver of those rights and accepted his judicial admission. That form, entitled "Waiver, Stipulation and Admission" provides:
I, J.S.S., the juvenile in the above entitled and numbered cause, do hereby in open Court admit to the allegations of the petition filed in said cause (or to a lesser included offense), and upon having entered my Admission, hereby waive my right to a trial by jury, waive the appearance, confrontation and cross examination of witnesses and further consent to the introduction of this Stipulation and Admission, and any other documentary evidence in support of the judgment of the Court. I agree that the evidence may be stipulated and that the attorney representing the State may make a statement to testimony upon which the petition was filed and the testimony which would have been produced against me in the trial of my case should I have demanded a trial, jury or non-jury.
I fully understand that if I admit to the offense or offenses, that I can be placed on probation until the age of Eighteen (18), or that I may be committed to the care, custody and control of the Texas Youth Commission, a state correction facility until the age of 21. I also understand that there has been no recommendation as to the disposition made either to me or my attorney by any attorney of the County Attorney's Office.
I hereby request the approval and consent of the Court to the foregoing waiver and consent.
I do now hereby, in open Court, ADMIT all of the allegation(s) (Count(s) I) of the petition in this cause and I confess that I committed the offense(s) charged in the petition (or lesser included offense of ____,[) ] waiving the rights to which I am entitled to under Section 51.09, Texas Family Code, and which rights have been explained fully by the Court and I understand those rights, particularly the right to require sufficient evidence to support the judgement [sic] of the Court, in view of my judicial confession herein made.
Based upon the waiver and stipulation, the court entered an adjudication order and set the case for a disposition hearing. At some point following the adjudication hearing, a juvenile probation officer, Amalia Caro-Sanchez, interviewed J.S.S. while he was in custody. Ms. Caro-Sanchez questioned J.S.S. not only about his personal circumstances and family environment but also about the facts of the instant case and his past history. During the disposition hearing, she testified over objection that J.S.S. told her he had committed *840 the same offense on two prior occasions and his brother-in-law who hired him to transport the drugs had paid him $700 for each trip. J.S.S. voluntarily testified during the disposition hearing. Over objection, the juvenile court questioned J.S.S. at length about the facts of this offense and the extraneous offenses. At the conclusion of the disposition hearing, the juvenile court judge specifically stated that in deciding to send J.S.S. to T.Y.C. rather than placing him in the Mexican National Children's Program, he took into account that J.S.S. had committed the same offense on two prior occasions.

PRE-DISPOSITION REPORT
In Issue One, J.S.S. asserts that the trial court erred in considering incriminating statements made by him during the pre-disposition interview because the juvenile probation officer did not warn him of his Fifth Amendment right to remain silent. J.S.S. relies on both Mitchell v. United States, 526 U.S. 314, 325-28, 119 S.Ct. 1307, 1314, 143 L.Ed.2d 424 (1999) and Estelle v. Smith, 451 U.S. 454, 466, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359 (1981) in support of his argument. The State responds that a juvenile's Fifth Amendment rights are extinguished at the conclusion of the adjudication hearing. It also argues that the privilege against self-incrimination should not be extended to the disposition hearing due to the difference in the goals of the adult criminal and juvenile systems. In addressing the issues before us, we will first consider whether the Fifth Amendment should be extended to the disposition hearing as a general matter, and then will address the more specific question whether the Fifth Amendment bars the use of any incriminating evidence gathered during the pre-disposition interview.
Although the State does not raise this issue, we have considered whether J.S.S. waived his complaint by testifying during the disposition hearing. When the juvenile court questioned J.S.S. about the subject matter of his incriminating statements, defense counsel continued to object. Further, it appears from the record that J.S.S. took the stand, at least in part, to respond to the pre-disposition report and the probation officer's recommendation. Under these circumstances, we do not find waiver. See Leday v. State, 983 S.W.2d 713, 718-19 (Tex.Crim.App.1998)(general rule of waiver or harmless error does not apply if defendant's testimony, which constituted other evidence of a fact that was proved over the defendant's objection, was impelled by the state's introduction of evidence that was obtained in violation of the law); see also Thomas v. State, 572 S.W.2d 507, 512 (Tex.Crim.App.1976)(the harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, or explain it by introducing rebutting evidence).
The Fifth Amendment to the United States Constitution prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5; Mitchell, 526 U.S. at 327, 119 S.Ct. at 1314. In Mitchell, the Supreme Court held that the sentencing proceeding in a federal criminal prosecution is considered to be part of the "criminal case" so that the Fifth Amendment's guarantee of the right to remain silent applies equally to that phase of a criminal case. See Mitchell, 526 U.S. at 327, 119 S.Ct. at 1314. The Supreme Court generally rejected the idea that entry of a guilty plea completes the incrimination of the defendant, thereby extinguishing the privilege. Mitchell, 526 U.S. at 327, 119 S.Ct. at 1313-14. So long as sentence has not yet been imposed, the defendant may have a legitimate fear of adverse consequences from further testimony. Id., 526 U.S. at 327, 119 S.Ct. at 1314. Any effort by the government to compel the defendant to testify against his will at the sentencing hearing would contravene the Fifth Amendment. Id.; Estelle, 451 U.S. at 462, 101 S.Ct. at 1872. Although the Supreme Court only recently clarified this issue in Mitchell, it has long been the law in Texas *841 that an adult defendant has a separate and distinct Fifth Amendment privilege against self-incrimination at the punishment phase of his bifurcated trial, and therefore, the mere finding of guilt does not terminate the privilege against self-incrimination. See Wilkens v. State, 847 S.W.2d 547, 553 (Tex.Crim.App.1992) (stating this rule); Brumfield v. State, 445 S.W.2d 732, 737-41 (Tex.Crim.App.1969) (adopting this rule following 1965 enactment of Article 37.07, which adopted bifurcated trial system applicable to trials of all felonies and misdemeanors punishable by imprisonment). Thus, the Fifth Amendment applies with equal force to the sentencing phase of a case even if the defendant waived his right to remain silent and testified during guilt-innocence. See Beathard v. State, 767 S.W.2d 423, 431-32 (Tex.Crim.App.1989) (trial court erred in refusing to give the jury a "no adverse inference" instruction during punishment phase; even though defendant testified during guilt-innocence, he retained right to remain silent during punishment phase); Brumfield, 445 S.W.2d at 741 (defendant's constitutional right against self-incrimination violated where State called defendant to testify at punishment phase regarding prior convictions; defendant's waiver of right at guilt-innocence by giving testimony on merits did not constitute waiver of right at punishment phase). A different rule, however, applies when the adult defendant enters a guilty plea in a non-capital felony case because the trial becomes a unitary proceeding, and thus, a separate punishment phase does not exist. In such a case, a written waiver of the Fifth Amendment right against self-incrimination made in conjunction with the guilty plea applies to the entire criminal adjudication proceeding, including the assessment of punishment. Carroll v. State, 975 S.W.2d 630, 632 (Tex.Crim.App.1998).[1]
By asserting that the Fifth Amendment does not apply to the disposition hearing in a juvenile proceeding because the goals of the adult criminal and juvenile systems are quite different, the State makes an argument that has been put forward as justification for denial of constitutional and procedural rights to juveniles since the inception of the juvenile system in the United States. More recently, however, a comparison of the aspirations of the juvenile system with its "grim realities" has caused this argument to be subjected to intense scrutiny, and on many occasions, has resulted in various constitutional and procedural rights being extended to juveniles. See Hidalgo v. State, 983 S.W.2d 746, 751-52 (Tex.Crim. App.1999); Lanes v. State, 767 S.W.2d 789, 800 (Tex.Crim.App.1989). At one time, procedural safeguards provided by the Constitution and Bill of Rights were inapplicable to juvenile proceedings due to the juvenile system's underlying philosophy that juveniles are in need of the state's care and guidance. Hidalgo, 983 S.W.2d at 750; Lanes, 767 S.W.2d at 792-94. Juvenile courts were created for treatment and rehabilitation of juvenile offenders and this focus on the best interest of the child through treatment set juvenile courts apart from regular criminal courts which directed their efforts at punishing the offender. Hidalgo, 983 S.W.2d at 750; Lanes, 767 S.W.2d at 792-93. In the process, juveniles were denied many fundamental constitutional and procedural rights. Hidalgo, 983 S.W.2d at 750. The United States Supreme Court first recognized the procedural injustice of the juvenile system in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The following year it decided In re Gault, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967) and held that the Fourteenth Amendment's Due Process Clause applied to juvenile delinquency *842 proceedings entitling juveniles to notice of charges, defense counsel, the privilege against self-incrimination, and confrontation of and cross-examination of witnesses. Hidalgo, 983 S.W.2d at 750-51.[2] However, juveniles have not been granted the full array of protections afforded adults under the Constitution and Bill of Rights. Id. at 751. Instead, the Supreme Court has taken a case-by-case approach to examine the protection claimed and the effect it would have on the unique framework of the juvenile justice system. Id. Following the Supreme Court's lead, the Court of Criminal Appeals articulated a balancing test in Lanes v. State for delineating which constitutional protections apply to juveniles in juvenile court proceedings. Hidalgo, 983 S.W.2d at 751. Under this test, the reviewing court compares the purposes and goals of the juvenile system to the particular right asserted. Id. Stated differently, the court must examine the impact or degree of impairment the constitutional protection will have on our juvenile justice system. Id. at 752. In adopting the Lanes test, the Court of Criminal Appeals noted that the juvenile system had become more punitive than rehabilitative. Lanes, 767 S.W.2d at 800. As recognized in Hidalgo, recent amendments to the Juvenile Justice Code have resulted in a more punishment-oriented system, and consequently, continue to erode the original justifications for denying juveniles the same procedural protections as adults. Hidalgo, 983 S.W.2d at 751. Indeed, two of the express purposes of the current Juvenile Justice Code are to provide for the protection of the public and public safety and to promote the concept of punishment for criminal acts. Tex.Fam.Code Ann. § 51.01(1), (2)(A)(Vernon 1996).
In conducting the Lanes balancing test, we will first examine the State's assertion that the Legislature has purposefully chosen not to extend the Fifth Amendment to the disposition hearing so that the juvenile court has available to it all information necessary to determine whether the child is in need of rehabilitation, and if so, what disposition is in the child's best interest. We have found no cases interpreting Section 54.04 in the manner suggested by the State. Section 54.04 does not expressly provide that a juvenile is not afforded the Fifth Amendment privilege against self-incrimination during the disposition hearing. It is only when we compare Sections 54.03 and 54.04 that a difference becomes apparent. Section 54.03, which governs the adjudication hearing, requires that the juvenile court provide the child with various admonishments, including a warning that he has a constitutional privilege against self-incrimination. See Tex.Fam.Code Ann. § 54.03(b)(Vernon Supp.2000). The same statute expressly provides that the child need not be a witness against nor otherwise incriminate himself, and it prohibits the admission of an extrajudicial statement by the child obtained in contravention of the Juvenile Justice Code or the state and federal constitutions. See Tex. Fam.Code Ann. § 54.03(e). By contrast, Section 54.04 does not require that the juvenile court admonish the child of his rights, including the privilege against self-incrimination, it does not provide for the juvenile's privilege against self-incrimination, and it does not expressly prohibit the admission of the juvenile's out-of-court statements taken in violation of the Fifth Amendment or other relevant constitutional and statutory provisions. That the Legislature expressly provided for the privilege against self-incrimination in connection with the adjudication hearing, but did not include a similar provision in Section 54.04, could be interpreted as indicating a legislative determination that the Fifth Amendment privilege does not apply during the disposition hearing. See Smith v. Baldwin, 611 S.W.2d 611, 616 (Tex. *843 1980) (when the Legislature has carefully employed a term in one section of a statute, and has excluded it in another, it should not be implied where excluded). On the other hand, Section 54.04, unlike Section 54.03, does not expressly provide for a juvenile's right of confrontation and cross-examination, yet none would argue that a child does not fully retain this right at the disposition hearing. See In the Matter of J.T.H., 779 S.W.2d 954, 957 (Tex.App.-Austin 1989, no writ)(rejecting claim that Section 54.04 denied due process rightsdue process is satisfied because the juvenile is represented by counsel, has full opportunity to cross-examine and present witnesses, and is fully aware of the nature of the proceedings). In construing a statute, it is presumed that compliance with the constitutions of this state and the United States is intended, the entire statute is intended to be effective, and that a just and reasonable result was intended. Tex.Gov't Code Ann. § 311.021 (Vernon 1998); Collins v. County of El Paso, 954 S.W.2d 137, 147 (Tex.App.-El Paso 1997, pet. denied). The Juvenile Justice Code specifically instructs us to construe its provisions in such a manner as will effectuate the purpose of providing a simple judicial procedure through which the provisions of Title 3 (the Juvenile Justice Code) are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced. Tex.Fam.Code Ann. § 51.01(6). Further, an appellate court does not construe a statute in a manner that will lead to a foolish or absurd result if another alternative is available. Bank One, Texas, N.A. v. Stewart, 967 S.W.2d 419, 438 (Tex. App.-Houston [14th Dist.] 1998, pet. denied); Estate of Padilla v. Charter Oaks Fire Ins. Co., 843 S.W.2d 196, 199 (Tex. App.-Dallas 1992, writ denied). Given the importance of the Fifth Amendment privilege to an individual's liberty, we decline to construe Section 54.04 as providing that a juvenile does not have a right against self-incrimination at the disposition hearing. Having said that, we still must determine whether the right should be extended to a juvenile.
Application of the Fifth Amendment to the disposition hearing would, according to the State, have a detrimental impact on the juvenile system in two ways. First, it would result in a system identical to the criminal system with its orientation towards punishment rather than rehabilitation. We are unable to perceive how providing a juvenile with protection against self-incrimination during the disposition hearing would cause the juvenile courts to focus more on punishment and less on rehabilitation of the juvenile. It would be improper for a court to draw an adverse inference from the juvenile's silence, see Mitchell, 526 U.S. at 329, 119 S.Ct. at 1315, and we trust that the juvenile courts will continue to properly exercise their judicial discretion in deciding an appropriate disposition. Further, as discussed above, our juvenile system has become increasingly punishment-oriented in recent years with amendments to the Juvenile Justice Code, and it is for that reason that a juvenile's Fifth Amendment privilege has assumed increased significance. See Tex. Fam.Code Ann. § 51.01 (Juvenile Justice Code must be construed to effectuate numerous purposes, including rehabilitation of the juvenile, protection of the public and public safety, promoting the concept of punishment for criminal acts, and protecting the welfare of the community and controlling the commission of unlawful acts by children).
Second, the State contends that availability of the Fifth Amendment privilege against self-incrimination during the disposition hearing will unduly restrict the information available to the juvenile court and detrimentally impact the juvenile court's ability to provide for the rehabilitation of the child. Regarding the evidence which may be considered during the disposition hearing, Section 54.04(b) permits the juvenile court to consider written reports from probation officers, professional *844 court employees, or professional consultants in addition to the testimony of witnesses. Tex.Fam.Code Ann. § 54.04(b). For many years, courts have construed Section 54.04(b) as broadening the pool of information available for the trial court's consideration at the disposition hearing, and consequently, have held that the rules of evidence do not apply to the written reports made admissible pursuant to this section. See In the Matter of A.F., 895 S.W.2d 481, 485-86 (Tex.App.-Austin 1995, no writ) (rejecting claim that social history report should have been excluded under various provisions of the Rules of Civil Evidence); In the Matter of A.N.M., 542 S.W.2d 916, 921 (Tex.Civ.App.-Dallas 1976, no writ) (rejecting argument that trial court had no authority to consider record of the adjudication hearing at the disposition hearing); see also In the Matter of J.R.C., 551 S.W.2d 748, 752 (Tex.Civ. App.-Texarkana 1977, writ ref'd n.r.e.) (rejecting hearsay challenge to use of social history report in a transfer to criminal court proceeding); Tyler v. State, 512 S.W.2d 46, 50 (Tex.Civ.App.-Beaumont 1974, no writ) (denying due process challenge to use of a social history report). We have no quarrel with this interpretation of Section 54.04(b) and fully agree that the juvenile court should have available to it as much information as possible to inform its determination of what disposition is appropriate in a given case. That does not mean, however, that the prosecuting authorities and juvenile courts should be free to acquire the information at the expense of the juvenile's Fifth Amendment rights. As the Supreme Court noted in Estelle v. Smith and later echoed in Mitchell, "[t]he essence of this basic constitutional principle is `the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" Mitchell, 526 U.S. at 326, 119 S.Ct. at 1314, quoting Estelle v. Smith, 451 U.S. at 462, 101 S.Ct. at 1872. While the child may be an important source of information, there are many other sources available who can provide the same information to the investigating officer who is preparing the pre-disposition evaluation report and social history. Family members can provide detailed information about the juvenile's parents and siblings, family and social environment, educational data, religious activities, employment history, and other relevant background information. A variety of records, including school records and psychological or psychiatric evaluations, can be consulted for other pertinent information. Law enforcement reports may be included in the pre-disposition report to provide information on the facts of the offense. Of course, the juvenile probation department has at its disposal its own records pertaining to the juvenile which may include prior informal adjustments and deferred adjudications. Regardless of whether the juvenile asserts his Fifth Amendment rights, a juvenile probation officer or other person preparing the report is permitted to include details about the child's attitude during personal contacts. Therefore, we reject the State's argument that extending the Fifth Amendment privilege to the disposition hearing will substantially impact the quantity and quality of information available to the juvenile court. Given that the disposition hearing is no longer focused strictly upon rehabilitation of the juvenile but has become increasingly punishment-oriented and given our conclusion that extension of the right does not unduly impair the goals and purposes of the juvenile system, we hold that a juvenile must be afforded his Fifth Amendment privilege against self-incrimination from the conclusion of the adjudication hearing through the conclusion of the disposition hearing.
We now turn our attention to whether the Fifth Amendment applies to the pre-disposition report. J.S.S. asks us to extend Estelle v. Smith to the portion of the pre-disposition report containing his admissions regarding the two extraneous *845 offenses and admitted in evidence against him at his disposition hearing because he was not advised of his right to remain silent and that any statement he made could be used against him during the disposition hearing. In Estelle v. Smith, a Texas capital case, the trial court ordered that Smith undergo a psychiatric examination to determine whether he was competent to stand trial. Following a ninety minute examination of the defendant in the Dallas County Jail, Dr. James P. Grigson concluded that Smith was competent to stand trial and filed a report with the court stating his findings, including his determination that Smith was a severe sociopath. Smith was never warned of his Fifth and Sixth Amendment rights prior to the examination nor was he warned that any statements made during the examination could be used against him during the punishment phase of trial. Dr. Grigson testified as the State's sole witness at the sentencing hearing, basing his testimony on information derived from his mental status examination of Smith. In testimony pertaining to the future dangerousness issue, Dr. Grigson told the jury that Smith was a severe sociopath who would continue to commit similar criminal acts if given the opportunity to do so, his sociopathic condition would only worsen, no treatment existed to modify or change his behavior, and he had no remorse or sorrow for what he had done. The Supreme Court concluded that admission of Dr. Grigson's testimony at the punishment phase violated Smith's Fifth Amendment privilege against self-incrimination.[3]See Estelle, 451 U.S. at 473, 101 S.Ct. at 1878. Although a competency exam is ordinarily a neutral proceeding which does not implicate a defendant's Fifth and Sixth Amendment rights when strictly used to determine competency, Dr. Grigson's examination of Smith amounted to a custodial interrogation entitling him to Fifth Amendment protections when information gleaned from the examination was used against him at the punishment phase to determine the future dangerousness issue. See Estelle, 451 U.S. at 468-71, 101 S.Ct. at 1875-77; Hidalgo, 983 S.W.2d at 753 (discussing Estelle v. Smith).
Thus, Estelle v. Smith teaches that the availability of the Fifth Amendment privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. Estelle, 451 U.S. at 468-71, 101 S.Ct. at 1875-77, citing In re Gault, 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967). By the same token, the Supreme Court stated that it did not hold that the same Fifth Amendment concerns are necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination. Estelle, 451 U.S. at 469 n. 13, 101 S.Ct. at 1876 n. 13.
There are no reported juvenile cases in which this issue is raised, and there are only four reported Texas criminal cases discussing whether a defendant must be warned prior to undergoing questioning by a probation officer for purposes of preparing a pre-sentence investigation.[4]See Garcia v. State, 930 S.W.2d 621 (Tex. App.-Tyler 1996, no pet.); Stewart v. State, 675 S.W.2d 524 (Tex.App.-Houston [14th Dist.] 1983, pet. ref'd); Edwards v. State, 652 S.W.2d 519 (Tex.App.-Houston [1st Dist.] 1983, pet. ref'd); Trimmer v. State, 651 S.W.2d 904 (Tex.App.-Houston [1st Dist.] 1983, pet. ref'd). Each case finds that the Fifth Amendment and Miranda requirements do not apply to a routine pre-sentence interview so the failure *846 to warn the defendant prior to the interview is not reversible error and did not preclude use of the report at sentencing. See Garcia, 930 S.W.2d at 624; Stewart, 675 S.W.2d at 526; Edwards, 652 S.W.2d at 519-20; Trimmer, 651 S.W.2d at 905-06.[5] All of the cases, except Garcia, involve convictions based upon pleas of guilty or nolo contendere. Thus, the holdings in Stewart, Edwards, and Trimmer are valid under Carroll because the defendant's waiver of his or her Fifth Amendment rights as part of the guilty plea would operate to waive those same rights for purposes of sentencing.[6] However, these cases are inapplicable here because there is no parallel rule in juvenile cases that a plea of true to the allegations in the petition results in a unitary proceeding. To the contrary, the disposition hearing is a separate and distinct proceeding. See Tex.Fam.Code Ann. § 54.04(a). Even though Garcia involved a bench trial, it followed Stewart, Edwards, and Trimmer without any discussion of whether a different rule should apply when the defendant pleads not guilty. The court of appeals also applied the rule that a trial court is presumed to have disregarded inadmissible evidence even though the Court of Criminal Appeals dispensed with that rule in Gipson v. State, 844 S.W.2d 738, 741 (Tex.Crim.App.1992). Garcia, 930 S.W.2d at 624. Accordingly, we respectfully decline to follow Garcia.
Like the situation in Estelle v. Smith, the juvenile probation officer's interview of J.S.S. exceeded any arguably neutral purposes when she questioned him about the facts of the primary offense and the two extraneous offenses and then testified during the disposition hearing about his incriminating statements in support of her recommendation to the juvenile court that J.S.S. be committed to the Texas Youth Commission. See Estelle, 451 U.S. at 467, 101 S.Ct. at 1866. Under these facts, we conclude that the Fifth Amendment applied to the pre-disposition interview with J.S.S., and therefore, he should have been warned of his rights and informed that his statements could be used against him during the disposition hearing.[7] It is undisputed that J.S.S. was not warned prior to the interview and he did not voluntarily waive his right against self-incrimination. Because the trial court considered these incriminating statements in making the decision to commit J.S.S. to T.Y.C. rather than place him in the Mexican National Children's Program, we find that J.S.S.'s Fifth Amendment privilege against self-incrimination was violated by the use of this information against him *847 during the disposition hearing.[8] Issue One is sustained. Accordingly, we reverse the disposition order and remand this cause for a new disposition hearing.
NOTES
[1] J.S.S. asserts that Carroll will not withstand scrutiny after Mitchell. That issue is not directly before us since Carroll is applicable only in adult criminal cases as there is no parallel rule in juvenile cases that a plea of true results in a unitary proceeding. Accordingly, we will not address the continued viability of Carroll.
[2] Gault expressly restricted its holding to adjudication proceedings and reserved opinion on whether the same rights should be extended to the disposition hearing. Gault, 387 U.S. at 12 and 31 n. 48, 87 S.Ct. at 1436 and 1445 n. 48.
[3] The Supreme Court also determined that admission of Grigson's testimony violated Smith's Sixth Amendment right to counsel. Estelle, 451 U.S. at 473, 101 S.Ct. at 1878. J.S.S. has not raised any complaints pertaining to violation of his Sixth Amendment right to counsel.
[4] See Tex.Code Crim.Proc.Ann. art. 42.12, § 9 (Vernon Supp.2000)(providing for presentence investigations).
[5] Both Trimmer and Edwards rely on Baumann v. United States, 692 F.2d 565 (9th Cir.1982) which refused to extend Estelle v. Smith's holding to the pre-sentence interview. One of the reasons offered by the Ninth Circuit for distinguishing Estelle v. Smith and refusing to apply its rule is that it involved a bifurcated jury proceeding in a capital case. Baumann, 692 F.2d at 576. We believe that applicability of the Fifth Amendment does not turn upon whether a particular proceeding involves a jury or whether the defendant is subject to the death penalty. Therefore, we decline to follow Baumann.
[6] Other facts support the appellate courts' disposition of these complaints. In Stewart, the plea papers signed by the defendant included a waiver of the right against self-incrimination and expressly provided for a pre-sentence investigation. See Stewart, 675 S.W.2d at 526. In Edwards, the defendant did not object when the court informed him that he was ordering a pre-sentence investigation and he failed to object when the court announced at sentencing that he had received a copy of the report and would consider it. Thus, the defendant's complaint regarding the trial court's consideration of the report was waived.
[7] Our opinion should not be read as holding that the Fifth Amendment applies to all pre-disposition interviews because the facts in a given case may show that the interview served more neutral purposes, and therefore, did not implicate the juvenile's Fifth Amendment rights. Rather than focusing on the type of proceeding involved, we believe the better approach is to examine the nature of the statement or admission and the exposure which it invites. See Estelle, 451 U.S. at 468-71, 101 S.Ct. at 1875-77.
[8] Given our disposition of this issue, we need not address Issue No. Two in which J.S.S. complains that he did not waive his right in the manner prescribed by Section 51.09 of the Texas Family Code.