

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00219-CV

_____

IN THE MATTER OF P.C.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-121134-23

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

## I.  INTRODUCTION

After a magistrate ordered Appellant P.C., a juvenile, detained at a detention hearing, P.C. threatened the magistrate and court staff.  The question before us is whether the trial court abused its discretion by admitting evidence of these threats during P.C.'s disposition hearing.  P.C. claims that admission of the threats violated the prohibition in Section 54.01(g) of the Texas Family Code, which provides, "No statement made by the child at the detention hearing shall be admissible against the child at any other hearing."  Tex. Fam. Code Ann. § 54.01(g).  We hold that the trial court did not abuse its discretion because P.C.'s threats were after, not at, the detention hearing and affirm the trial court's judgment.

## II.  JUVENILE-COURT PROCEEDINGS

The trial court found that P.C. had engaged in delinquent conduct by committing the offenses of assault of a public servant[1] and retaliation.[2]  *See id.* § 51.03(a)(1); Tex. Penal Code Ann. §§ 22.01(b)(1) (assault of public servant), 36.06 (retaliation).  After a disposition hearing, the trial court ordered P.C. committed to the Texas Juvenile Justice Department with an indeterminate sentence.  *See* Tex. Fam. Code Ann. § 54.04(d)(2).

---

[1]P.C. head-butted two police officers.  He was adjudicated for head-butting only one officer.

[2]P.C. threatened to kill four police officers.  He was adjudicated for threatening to kill only one officer.

### III. P.C.'S APPELLATE COMPLAINT

On appeal, in one issue, P.C. argues that during the disposition hearing, the trial court abused its discretion by admitting statements that he had made after the magistrate had ordered him detained at a detention hearing. *See id.* § 54.01 ("Detention Hearing"). Specifically, P.C. argues that Section 54.01(g) prohibits statements made by a juvenile "at the detention hearing" from being used in later hearings. *See id.* § 54.01(g). Although not entirely clear, he appears to maintain that Section 54.01(g) applies to the statements that he made in the courtroom and to the statements that he made in the hallway outside the courtroom.

### IV. STATE'S RESPONSE

The State contends that Section 54.01(g) does not block the admission of P.C.'s statements after the disposition hearing. First, the State argues that Section 54.01(g) does not apply to any statements made outside the courtroom. Second, as for those statements made in the courtroom, the State argues that detention hearings end after both parties close and before the magistrate rules or, in the alternative, when the magistrate rules.[3] *See In re Hall*, 286 S.W.3d 925, 929 (Tex. 2009) (orig. proceeding) (stating that "[f]ollowing [the detention] hearing, the court must release the child unless" it finds that the juvenile falls under the criteria provided by Texas Family

---

[3]The State also argues that P.C. failed to preserve his complaint. To comply with Section 54.01(g), the trial court indicated that it would not consider the evidence even after it came in. Once the trial court ruled in the State's favor, P.C. requested and the trial court granted a running objection.

Code Section 54.01(e)(1)–(5)).  In P.C.'s case, the disputed statements occurred after the magistrate made its ruling, so the State concludes that the Section 54.01(g) prohibition does not apply.[4]

## V.  P.C.'S CONSTRUCTION OF "AT THE DETENTION HEARING"

At trial, P.C. argued that his statements were part and parcel of the detention hearing and necessarily occurred "at the detention hearing," so they fell within Section 54.01(g)'s prohibition.  From P.C.'s perspective, the statements occurred at the detention hearing as opposed to some other hearing or as distinguished from some other setting.  Just because the magistrate made its ruling, he argues, did not necessarily mean the detention hearing was over.

## VI.  THE STATEMENTS IN DISPUTE

What were those statements?  In the courtroom, after the magistrate ordered P.C. detained, P.C. threatened to shoot the magistrate and one of the bailiffs.  Immediately thereafter, in the hallway outside the courtroom, P.C. threatened to shoot the court intake unit supervisor, a probation officer, and a detention officer.

In addition to his threats, in the hallway, P.C. attempted to head-butt the supervisor and spat in the face of the detention officer.  We do not understand P.C.'s argument to encompass these acts.

---

[4]The trial court adopted the State's construction and ruled that Section 54.01(g) did not apply because everything disputed occurred after the magistrate had ordered P.C. detained.

4

## VII.  STANDARD OF REVIEW

We review a juvenile court's decision to admit evidence under an abuse-of-discretion standard.  *In re A.W.*, 661 S.W.3d 547, 552 (Tex. App.—Houston [14th Dist.] 2023, pet. denied); *In re J.M.*, No. 02-19-00325-CV, 2020 WL 3987581, at *2 (Tex. App.—Fort Worth June 4, 2020, no pet.) (mem. op.).  So long as the juvenile court's ruling falls within the zone of reasonable disagreement, it does not abuse its discretion.  *A.W.*, 661 S.W.3d at 552; *J.M.*, 2020 WL 3987581, at *2.  We uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling.  *Beck v. Law Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 442 (Tex. App.—Austin 2009, no pet.).

## VIII.  DISCUSSION

The statute in question provides, "No statement made by the child at the detention hearing shall be admissible against the child at any other hearing."  Tex. Fam. Code Ann. § 54.01(g).  We must determine whether this provision encompasses statements made by the juvenile after the trial court ordered the juvenile detained.  For the reasons given below, we hold that it does not.

### A.  Rules of construction

Construing a statute is a question of law reviewed under a de novo standard.  *Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 354 (Tex. 2023).  We interpret statutes by

- looking to their plain language and

- construing the text in light of the statute as a whole.

*City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023). Thus, we give statutory terms their common, ordinary meaning unless

- the text provides a different definition or

- the common meaning leads to an absurd result.

*Id.*; *see In re K.C.*, 656 S.W.3d 146, 150 n.12 (Tex. App.—Fort Worth 2022, no pet.). We may not impose our own judicial meaning on a statute by adding words or requirements. *City of Austin*, 669 S.W.3d at 821. Further, we do not interpret statutes in strict isolation; rather, we interpret the statute's words with reference to the legislature's broader statutory context. *Id.* We give effect to all the statute's words without, if possible, treating any language as surplusage. *Id.* If undefined terms have multiple meanings, we recognize and apply only the meanings that are consistent with the statutory scheme as a whole. *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015).

## B. Juvenile justice code's overall focus

The juvenile justice code's overall purpose is, broadly speaking, to protect the public and to rehabilitate the juvenile. *See* Tex. Fam. Code Ann. § 51.01.[5]

---

[5]Section 51.01 provides,

This title shall be construed to effectuate the following public purposes:

   (1) to provide for the protection of the public and public safety;

And procedurally, the juvenile justice code protects juveniles in ways that adults are not protected. For example, written statements by a juvenile must be made in the presence of a magistrate with no prosecuting attorney present and generally no law enforcement officer present. *Id.* § 51.095(a)(1)(B)(i). And statements made by the

---

(2) consistent with the protection of the public and public safety:

(A) to promote the concept of punishment for criminal acts;

(B) to remove, where appropriate, the taint of criminality from children committing certain unlawful acts; and

(C) to provide treatment, training, and rehabilitation that emphasizes the accountability and responsibility of both the parent and the child for the child's conduct;

(3) to provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions;

(4) to protect the welfare of the community and to control the commission of unlawful acts by children;

(5) to achieve the foregoing purposes in a family environment whenever possible, separating the child from the child's parents only when necessary for the child's welfare or in the interest of public safety and when a child is removed from the child's family, to give the child the care that should be provided by parents; and

(6) to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights [are] recognized and enforced.

*Id.*

juvenile "at a detention hearing" are not admissible. *Id.* §§ 51.095(a)(4)(C), 54.01(g). The structure of detention hearings reflects the added safeguards accorded a juvenile.

## C. Detention hearings

Before a detention hearing begins, the trial court must advise the juvenile both of his right to counsel and of his right to remain silent:

> Prior to the commencement of the hearing, the court shall inform the parties of the child's right to counsel and to appointed counsel if they are indigent and of the child's right to remain silent with respect to any allegations of delinquent conduct, conduct indicating a need for supervision, or conduct that violates an order of probation imposed by a juvenile court.

*Id.* § 54.01(b). But a juvenile's right to counsel at a detention hearing—although strongly encouraged—is not absolute. *See id.* § 54.01(b-1) ("Unless the court finds that the appointment of counsel is not feasible due to exigent circumstances, the court shall appoint counsel within a reasonable time before the first detention hearing is held to represent the child at that hearing."); *see also* 29 Thomas S. Morgan & Harold C. Gaither Jr., *Texas Practice: Juvenile Law and Practice* § 9:2 (3d ed.), Westlaw (database updated Nov. 2022) (observing that there is "[n]o absolute right to an attorney at detention hearings").

Accordingly, in the context of a detention hearing, there may be instances when the juvenile is not represented by counsel. Consistent with the juvenile justice code's overall concern that juveniles are vulnerable, Section 54.01(g) provides an added layer of protection for any self-incriminating statements that a juvenile might make at a

detention hearing. *See* Tex. Fam. Code Ann. § 54.01(b), (g); *In re A.K.*, No. 02-20-00410-CV, 2021 WL 1803774, at \*15 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.). This safeguard is the one that P.C. contends was violated.

## D. Disposition hearings

When it comes to the disposition hearing, however, from the juvenile's perspective, the rules may be perceived as less favorable. During a disposition hearing, the rules regarding what is admissible are relaxed: "At the disposition hearing, the juvenile court, notwithstanding the Texas Rules of Evidence or Chapter 37, Code of Criminal Procedure, may consider written reports from probation officers, professional court employees, guardians ad litem appointed under Section 51.11(d), or professional consultants in addition to the testimony of witnesses." Tex. Fam. Code Ann. § 54.04(b). "Courts have construed Section 54.04(b) as broadening the pool of information available for the trial court's consideration at the disposition hearing." *J.M.*, 2020 WL 3987581, at \*3 n.4. "We have no quarrel with this interpretation of Section 54.04(b) and fully agree that the juvenile court should have available to it as much information as possible to inform its determination of what disposition is appropriate in a given case." *In re J.S.S.*, 20 S.W.3d 837, 844 (Tex. App.—El Paso 2000, pet. denied).

The disputed statements here were not admitted during the adjudication hearing to help prove that P.C. committed the offenses alleged in the State's petition. Rather, they were admitted during the disposition hearing to help the trial court

9

determine its disposition. Threats to kill one of the trial judge's magistrates and other court personnel seem like the type of information that would aid the trial court when making its disposition ruling. Still, the question remains whether Section 54.01(g)'s prohibition against admitting statements "made by the child at the detention hearing" prevented the trial court from admitting P.C.'s threats in this instance.

**E. "At the detention hearing"**

"At the detention hearing" may lend itself to different constructions. The State contends that the detention hearing was over once the parties closed or, at the latest, when the trial court ordered P.C. detained, whereas P.C. argues that his outbursts occurred "at the detention hearing" in the sense that they occurred at the detention hearing and not at some other hearing or in some other setting or context.

The State's construction is a reasonable one. Once the trial court ordered P.C. detained, the detention hearing was over. Any statements that P.C. made thereafter were in the courtroom or just outside the courtroom but were not "at the detention hearing." Theoretically, a proceeding for direct contempt might have followed. *See* Tex. Fam. Code Ann. § 54.07(c); *see, e.g., In re J.D.*, No. 02-21-00356-CV, 2021 WL 5277134, at *1 (Tex. App.—Fort Worth Nov. 12, 2021, orig. proceeding) (mem. op.) (involving juvenile held in direct contempt for conduct during a detention hearing). But the detention hearing itself was over. Consistent with our assessment that the juvenile justice code's overall purpose is to protect the public and rehabilitate the child, we construe "at the detention hearing" to mean during the detention hearing

10

itself, not before and not after.[6] *See City of Austin*, 669 S.W.3d at 821 (stating that statutes are interpreted with reference to the legislature's broader statutory context). As the Texas Supreme Court recently noted, "We should strive throughout the law for easily administrable bright-line rules, which can be followed by parties with confidence and applied by judges with predictability." *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 637 (Tex. 2023). With that goal in mind, we hold that the detention hearing ended when the magistrate ordered P.C. detained.

## F. Ruling

Accordingly, we hold that the trial court did not abuse its discretion by admitting P.C.'s threats to shoot the magistrate, the bailiff, the court intake unit supervisor, the probation officer, and the detention officer.

To the extent, if any, that P.C.'s argument encompasses the attempted head-butt and the spitting incidents in the hallway, they occurred after the detention hearing too, so they would not fall under Section 54.01(g)'s prohibition either.[7]

---

[6]P.C. points to no other statutes that protect juveniles from statements made in other contexts. And the only other statute that we have noted is Section 51.095(a)(1)(B)(i), which is inapplicable here.

[7]One definition of "statement" would not require speech: "an opinion, comment, or message conveyed indirectly usually by nonverbal means." *Statement*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/statement (last visited Nov. 6, 2023). Assuming that the attempted head-butting and the spitting incidents were "statements" under Section 54.01(g)—an issue we need not resolve here—they were nevertheless after the detention hearing had ended. *Cf. id.* (defining "statement" as "something stated: such as . . . a single declaration or remark

11

We overrule P.C.'s sole issue.

## IX.  CONCLUSION

Having overruled P.C.'s sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  November 9, 2023

---

. . . [or] a report of facts or opinions" and "the act or process of stating or presenting orally or on paper").